IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BASIC CAPITAL MANAGEMENT, §
INC., et al., §
 §
Plaintiffs, §
 §
VS. § Civil Action No. 3:17-CV-1147-D
 §
DYNEX CAPITAL, INC., et al., §
 §
Defendants. §

MEMORANDUM OPINION
AND ORDER

Plaintiffs' motion to remand this removed action presents the question whether removal of this action—in which it is undisputed that the parties are diverse citizens and that the minimum jurisdictional threshold is exceeded—is nonetheless impermissible under the rule of *Barrow v. Hunton*, 99 U.S. 80 (1878), which precludes removal jurisdiction over a state court action that seeks to nullify or enforce a prior state-court judgment. For the reasons that follow, the court denies the motion to remand and denies as moot plaintiffs' motion to stay the case pending a decision on the remand motion.

I

Plaintiffs Basic Capital Management, Inc. ("BCM"), American Realty Trust, Inc. ("ART"), and Transcontinental Realty Investors, Inc. ("TRI") bring this action against defendants Dynex Capital, Inc. ("Dynex") and Dynex Commercial, Inc. ("DCI") to recover on claims for fraudulent transfers, alter ego, and related claims.

Plaintiffs' suit relates to a case filed nearly two decades ago. Dynex and DCI are real

estate lending companies. They entered into a transaction with BCM on behalf of ART and TCI, which included two loan commitments—one to borrow $33.4 million to acquire and develop three buildings in New Orleans, and one to borrow $160 million to develop commercial and multifamily properties (the "$160 Million Commitment"). In 1999 BCM, ART, and TRI sued DCI in Texas state court, alleging five claims related to the breach of the $160 Million Commitment.[1] In 2000 Dynex was added as a defendant in the state court action. The jury found DCI liable for breaching the $160 Million Commitment, but found that Dynex was not liable for any claims related to the $160 Million Commitment.[2] In 2004 the trial court granted plaintiffs' post-verdict motion for judgment notwithstanding the verdict and entered a take-nothing judgment against both DCI and Dynex Capital. Plaintiffs appealed the take-nothing judgment against DCI but did not appeal the take-nothing judgment in favor of Dynex. After appeals to the court of appeals and the Supreme Court of Texas, the trial court in 2015 entered a final judgment against DCI, awarding plaintiffs damages for breach of the $160 Million Commitment. In April 2017 plaintiffs filed the present action in state court in an attempt to collect against Dynex based on the state court

---

[1] Dynex made one loan to TCI under the $160 Million Commitment in 1998, but, several months later, it allegedly refused to loan additional funds to BCM, even though there was $154 million remaining on the Commitment. Dynex refused to fund tenant improvements in New Orleans unless the BCM affiliates agreed to cancel the remainder of the $160 Million Commitment.

[2] The court does not detail the holdings of the state courts regarding the New Orleans loan agreement because the final state court judgment did not involve any liability or damages against defendants for breach of that particular agreement.

judgment against DCI. These claims are all based on Dynex's allegations that, beginning in 1999 and leading up to and through the appellate process, Dynex and DCI attempted to evade judgment creditors through a series of transfers of DCI's assets that eventually led to its insolvency. Plaintiffs allege that these transfers were motivated by an effort to evade judgment creditors. Their state-court original petition ("petition") alleges claims for fraudulent transfer[3] and civil conspiracy[4] under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 (West 2017), and alter ego liability.[5] Plaintiffs also seek other remedies relating to DCI and Dynex's allegedly fraudulent conduct.[6] In May 2017 Dynex and DCI removed the case to this court under 28 U.S.C. § 1332 based on diversity of citizenship.[7]

---

[3]The petition asserts: "[DCI] transferred its Property to [Dynex] with the intent to hinder, delay, and defraud its creditors or other interested persons from obtaining that to which they are entitled which may become due," and seeks remedies pursuant to Tex. Bus. & Com. Code Ann. § 24.008 (West 2017). Pet. ¶ 34.

[4]The petition alleges: " Defendants entered into a combination of two or more persons to fraudulently transfer Dynex Commercial's Property . . . . The object of the conspiracy was to hinder, delay, or defraud Dynex Commercial's creditors, including Plaintiffs." *Id.* at ¶ 38.

[5]The petition asserts: "Defendants should be held jointly and severally liable for the causes of action set out herein as they constitute a single business enterprise and carry out a common business objective." *Id.* at ¶ 42.

[6]Plaintiffs seek appointment of a receiver under Texas law to protect the value of their judgment by conserving the assets of Dynex and DCI. *Id.* at ¶ 52. They also seek exemplary damages and attorney's fees. *Id.* at ¶¶ 56, 58.

[7]Defendants' notice of removal states that the suit is being removed under 28 U.S.C. § 1332(a)(3), but the removal provision applicable to this case is § 1332(a)(1), because this case does not involve "citizens or subjects of a foreign state" as additional parties. Ds. Removal Notice 2. Under 28 U.S.C. § 1332(a)(1), the district court "shall have original

BCM, ART, and TRI move to remand and to stay this litigation pending the court's decision on the remand motion. Dynex and DCI oppose the motions, and they separately move to dismiss this suit.[8]

II

As the removing parties, Dynex and DCI "ha[ve] the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, L.L.C.*, 2005 WL 265167, at *1 (N.D. Tex. Feb.1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)). "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). "The federal removal statute, 28 U.S.C.

---

jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" BCM is a Nevada corporation with its principal place of business in Texas. ART is a Georgia corporation with its principal place of business in Texas. TCI is a Nevada corporation with its principal place of business in Texas. Dynex and DCI are Virginia corporations with their principal places of business in Virginia. The parties are therefore completely diverse citizens. And plaintiffs seek monetary relief over $1 million, so the amount in controversy exceeds the jurisdictional minimum.

[8]The court is not deciding the motions to dismiss in this memorandum opinion and order. Those motions will be decided in due course by a separate ruling.

§ 1441, is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

III

Plaintiffs do not contest diversity of citizenship or the amount in controversy. They maintain, however, that the court lacks jurisdiction because this suit represents a mere continuation of the original state-court suit.

A

A federal court does not have removal jurisdiction over a state court action that seeks to nullify or enforce a prior state court judgment. *See Barrow*, 99 U.S. at 82-83 (holding that federal court lacked jurisdiction to rule in "proceeding to procure nullity" of state court judgment); *Beighley v. FDIC*, 868 F.2d 776, 781 (5th Cir. 1989) ("As modern case law makes clear, the *Barrow* rule applies only when an action in federal court seeks to nullify or to enforce the judgment of a prior state court suit."), *superseded by statute on other grounds as stated by Tedford v. Warner-Lambert Co.*, 327 F.3d 428 n.14 (5th Cir.1989); *Wuxi Taihu Tractor Co. v. York Grp., Inc.*, 460 Fed. Appx. 357, 359 (5th Cir. 2012) (per curiam) (applying *Barrow* where plaintiff sought bill of review in removed Texas court action). Courts consider whether the second suit "is a supplementary proceeding so connected with

the original suit as to form an incident to it, and substantially a continuation of it." *Barrow*, 99 U.S. at 82. If the court is asked to overturn the prior state court judgment on the basis of procedural irregularities, and the litigant presents no new, substantive arguments, federal jurisdiction may be improper. But if a litigant asserts new, substantive arguments, the federal court can exercise jurisdiction. *See Barrow*, 99 U.S. at 85 (contrasting "causes relat[ed] to form and those relat[ed] to the merits"); *Wuxi Taihu*, 460 Fed. Appx. at 359 (holding that case should be remanded because it dealt with procedural irregularities in state proceeding). Courts must distinguish between cases seeking a "revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts" and those that constitute "a new case arising upon new facts, [which] although having relation to the validity of an actual judgment or decree, or of the party's right to claim any benefit by reason thereof," are nevertheless independent of the previous judgment. *Barrow*, 99 U.S. at 83. "The distinction between the two classes of cases may be somewhat nice, but it may be affirmed to exist." *Id*.

B

The court now examines whether the claims in this suit qualify under *Barrow* as actions separate from the original state suit.

1

As a preliminary matter, the court notes that the Fifth Circuit is hesitant to construe the *Barrow* rule broadly. Given evolving views regarding how removal implicates federalism concerns, *Barrow*'s applicability is uncertain:

> *Barrow* relied on an interpretation of removal which may well be no longer valid. *Barrow* rests on the notion that removal is like an appeal because the proceeding did not commence in federal court. The modern view of removal, however, is that it is more closely akin to original than to appellate jurisdiction because once the case is removed, it is treated as if it had commenced in federal court.

*In re Meyerland Co.*, 910 F.2d 1257, 1261 (5th Cir. 1990), *on reh'g*, 960 F.2d 512 (5th Cir. 1992). More recent decisions of the Fifth Circuit and of district courts within the circuit hold in limited circumstances that removal is improper under *Barrow*. *See Wuxi Taihu*, 460 Fed. Appx. at 359 (holding that Texas bill of review—which is a "Texas-law equitable proceeding through which a party may seek relief from a judgment no longer challengeable by appeal or a motion for new trial"—constituted supplementary action); *McMillin v. Breen*, 2008 WL 782812, at *2 (E.D. La. Mar. 20, 2008) (holding that removal of lawsuit seeking to make final an executory judgment of prior state court suit was improper under *Barrow*); *see Taylor v. Taylor*, 2001 WL 1491026, at *1 (E.D. La. Nov. 21, 2001) (concluding that there was no federal jurisdiction over action seeking to "overturn the judgments that have been issued in the state court and bankruptcy proceedings").

2

Plaintiffs maintain that their fraudulent transfer claim asserted after judgment, even when it includes a third party, is "a claim against the alleged debtor" and "a continuation of the claims against it." Ps. Motion to Remand 7. The court disagrees.

First, the court declines to extend the *Barrow* rule absent clear precedent, and the court is not aware of any case that applies *Barrow* to a fraudulent transfer claim like the one

in this case.⁹ Plaintiffs cite state court interpretations of TUFTA actions as "enforcement actions." *See* Ps. Reply at 5 (citing *Kennedy v. Hudnall*, 249 S.W.3d 520 (Tex. App. 2008)).¹⁰ But these cases shed little light on the touchstone of *Barrow*—whether the actions in question involve new facts or legal theories.

Applying this principle from *Barrow*, the court holds that plaintiffs' fraudulent transfer claim is an action that is independent from the original state suit.¹¹ Here, plaintiffs

---

⁹One line of cases from outside the Fifth Circuit—including *Office Bldg., LLC v. CastleRock Sec., Inc.*, 2011 WL 1674963 (S.D. Fla. May 3, 2011)—holds that actions by judgment creditors to implead third parties in possession of potential judgment assets constitute ancillary proceedings over which a federal court lacks jurisdiction. *See id.* at *2. These cases are distinguishable, however, because they involve a statute (Fla. Stat. Ann. § 56.29 (West 2017)) that specifies that such actions are to be brought as supplementary proceedings in the original suit. In this case, however, plaintiffs have brought their claims in a separate suit.

¹⁰In *Kennedy* a Texas court of appeals held that it lacked jurisdiction to review a lower court order on a fraudulent transfer claim under Tex. Bus. & Com. Code Ann. § 24.008(b). This section provides that a judgment creditor, "if the court so orders, may levy execution on the asset transferred or its proceeds." *Id.* § 24.008(b). The court of appeals held that because the order carried into effect an already entered judgment, the appellate court could not exercise jurisdiction without infringing on the lower court's authority to enforce its own judgment. *Kennedy*, 249 S.W.3d at 522. In their reply, plaintiffs imply that their fraudulent transfer claim falls under § 24.008(b) and that it merely seeks to enforce the state court judgment. Ps. Reply 7. But in analyzing their claim, the court concludes that it more properly falls under § 24.008(a). Plaintiffs filed this lawsuit separately from the state court suit, *see Kennedy*, 249 S.W.3d at 522 (noting that § 24.008(a) requires separate lawsuit). And their petition almost exactly tracks the statutory language of § 24.008(a). Pet. 11 ¶ 35 (seeking remedies of avoidance of transfers, attachment against the property, appointment of a receiver). *Kennedy*'s conclusions about § 24.008(b) are thus inapplicable to the present suit.

¹¹Plaintiffs' motion does not directly address the civil conspiracy claim. But given that the anchor for the conspiracy claim is the fraudulent transfer claim, the court concludes that it may also exercise subject matter jurisdiction over the civil conspiracy cause of action for the same reasons that it may do so over the fraudulent transfer claim.

allege a new claim that they have not previously litigated in state court.[12] *See Wuxi Taihu*, 460 Fed. Appx at 359 (pointing to fact that "Wuxi alleges no claim or defense that was not previously before the state court" as support for lack of federal jurisdiction over removed claim). The factual and legal issues underpinning the fraudulent transfer claim are unrelated to the issues surrounding the breach of the $160 Million Commitment that formed the basis of the original suit. *See Brown v. Bank of Am., N.A.*, 2013 WL 5538693, at *3 (N.D. Tex. Oct. 8, 2013) (Fitzwater, C.J.) (holding that bill of review that was not based on procedural irregularities and that presented new legal arguments was "a new case arising upon new facts"); *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1131 (11th Cir. 2013) ("The [claim of fraudulent transfer by a judgment debtor] is an independent civil action because it seeks to impose new liability on new parties founded on wholly new legal theories and based on a completely different factual matrix.").[13] For example, the allegedly fraudulent

---

[12]Plaintiffs cite *In re International Paper Co.*, 961 F.2d 558, 562 (5th Cir. 1992), for the proposition that fraudulent transfer claims are neither independent nor subject to removal. Ps. Motion to Remand 8. But such a conclusion does not necessarily follow from the passages that plaintiffs cite. These passages merely state that the debtor retains an equitable interest in fraudulently transferred property, so creditors may execute judgment on it as though the interest were never transferred. *See id.* at 7-8 (citing *In re Int'l Paper Co.*, 961 F.2d at 560). The *International Paper* court instructed the district court that, "[i]f the [plaintiffs] cannot include the fraud claim in the turnover application, then . . . [they assert] a fraudulent transfer claim against [defendant] that is separate and independent from the [original] suit." *In re Int'l Paper Co.*, 961 F.2d at 562.

[13]Although this case does not discuss *Barrow*, it provides insight into whether a suit is a new case or simply a relitigation of a state suit in the context of removal and federalism concerns. In *Jackson-Platts* the Eleventh Circuit applied the *Colorado River* abstention doctrine, which provides "as a threshold matter," that a federal court may abstain [from hearing a case] under that doctrine only if there is a parallel state action, which is one

transfers did not commence until 1999, and plaintiffs assert that they did not discover such transfers until the post-judgment discovery process.[14] The facts relating to the fraudulent transfers in this suit are entirely separate from the facts of the breach of contract around 1998 in the original suit. And in the present case, plaintiffs seek to impose "new liability based on a wholly new theory." *See Jackson-Platts*, 727 F.3d at 1135. While the original state suit involved a contract claim, the fraudulent transfer claim relates to a different cause of action under TUFTA. *See id.* (concluding that fraudulent transfers involved different legal issues from underlying claim of negligence). As such, the instant suit does not merely seek to enforce the state court judgment.[15]

---

involving "substantially the same parties and substantially the same issues." *Jackson-Platts*, 727 F.3d at 1140. "*Colorado River* abstention applies in exceptional circumstances," and "[o]nly the clearest of justifications merits abstention." *Id.* (internal citations omitted).

[14]Plaintiffs allege in their petition:

> Dynex Commercial's transfers only became known during the post-judgment discovery process when Plaintiffs uncovered one of the most flagrant cases of a judgment debtor fraudulently transferring millions of dollars of [its] assets to defraud a judgment creditor and engaged in fraud, including perpetrating a fraud not only on its creditors, but on the very Court that tried the case and entered the verdict.

Pet. 4 ¶ 14.

[15]Plaintiffs cite *In re Mortgageamerica Corp.*, 714 F.2d 1266 (5th Cir. 1983), for the proposition that a fraudulent transfer claim is considered to be a continuation of the claims against the alleged debtor. This citation, however, is misplaced. *Mortgageamerica* does not address federal jurisdiction in relation to removal. Instead, it addresses whether a debtor has an interest in fraudulently transferred property. *See id.* (holding that bankrupt debtor engaged in fraudulent transfers "is considered to have a continuing legal or equitable interest in the property fraudulently transferred; therefore, automatic stay prevented bank from

Plaintiffs contend that their alter ego claim is also a continuation of the original suit because it is a theory of liability that merely seeks to enforce the judgment of that suit. The court disagrees. The court is aware of no cases that specifically hold that subsequent claims of alter ego liability constitute a continuation of the original suit under *Barrow*. And given the uncertainty of its relevance in the modern judicial system, the court is hesitant to expand the *Barrow* rule based on state statutes and court cases cited by plaintiffs, which have no relation to the issue of removal.[16]

Based on the principles of *Barrow*, the alter ego claim represents an independent action for the same reasons that the fraudulent transfer claim does. The transfers on which the alter ego claim relies involve different facts from those in the original breach of contract claim. Plaintiffs allege that they only became aware of these transfers during the post-judgment discovery process, so presumably they could not have relied on these transactions in the original state court proceeding. *See Brown*, 2013 WL 5538693, at *3 (holding that bill of review that "present[ed] legal arguments not presented during the earlier proceeding" was

---

continuing to pursue a cause of action[.]").

[16]Plaintiffs cite several cases for the proposition that "an attempt to pierce the corporate veil, in and of itself, is not a cause of action but rather is a means of imposing liability on an underlying cause of action such as a tort or breach of contract." *Gallagher v. McClure Bintliff*, 740 S.W.2d 118, 119 (Tex. App. 1987, writ denied). But these cases do not bear any relation to the *Barrow* doctrine or the issue of removal. The court similarly does not give any weight to the fact that this suit was certified pursuant to Dallas County Local Rule 1.06 as a suit substantially related to the 1999 suit. Rule 1.06, which "facilitate[s] orderly and efficient disposition of the litigation" by allowing transfer of a later case to the same court in which the original case was litigated, does not have any connection to *Barrow*.

"a new case arising upon new facts"). Alter ego liability also involves a different legal theory than the breach of contract claim adjudicated in state court.[15] Thus "although [it has] relation to the validity of an actual judgment or decree," *Barrow*, 99 U.S. at 83, it is a separate case suitable for removal to a federal court.[16]

For the foregoing reasons, the court concludes that it can exercise jurisdiction in the present case.[17]

IV

The court now turns to plaintiffs' contention that removal was untimely.

The time limits for filing notices of removal are governed by various provisions of 28 U.S.C. § 1446. Section 1446(b)(1) provides, in pertinent part, that the notice must be filed within 30 days of the defendant's receipt of the initial pleading, if the case is removable, that is, if the case could have been filed originally in federal court. When the case is not

---

[15]It does not appear that the alter ego claim at issue here was ever litigated in state court. Because the state court did not render a final decision on the alter ego claim, a judgment by this court on the issue could not constitute a nullification or enforcement of a prior state court judgment. The court thus concludes that plaintiffs' present alter ego claim represents an independent cause of action from the original suit.

[16]Defendants also contend that, because res judicata and the statute of limitations bar the assertion of an alter ego claim in the present suit, plaintiffs should not be able to tack on such claims in order to manipulate removal rules. *See, e.g.,* Dynex Br. 6-7 (citing *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692 (Tex. 1990)). Because their arguments relate to the merits of the case, the court will not address them when deciding whether it can exercise subject matter jurisdiction over these claims.

[17]Because the court holds that it can exercise jurisdiction over the alter ego claim without running afoul of the *Barrow* doctrine, it does not reach DCI's argument that because Dynex's removal was "indisputably proper," the court can exercise supplemental jurisdiction over DCI. DCI Br. 12.

removable based on the initial pleading, however, § 1446(b) provides that "a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). No case may be removed based on diversity of citizenship more than one year after it was commenced, unless the court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action. 28 U.S.C. § 1446(c)(1).

Plaintiffs maintain that because the present suit represents a mere continuation of the underlying suit, which commenced in 1999, removal occurred more than one year after the case was filed. For the reasons stated above, the court views this suit as separate from the 1999 suit. *See Int'l Paper Co.*, 961 F.2d at 562 (instructing district court upon remand that fraudulent transfer claim, when not part of claim for turnover relief, was separate action that was timely removed, although original suit was commenced more than one year earlier). And here, plaintiffs filed suit on April 26, 2017, and defendants filed a notice of removal five days later, on May 1, 2017. Because the removal occurred well within the 30-day time limit imposed by § 1446(b)(1), the court holds that the case was timely removed.

* * *

For the reasons explained, the court denies plaintiffs' motion to remand, and it denies plaintiffs' motion to stay as moot.

**SO ORDERED**.

November 7, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE