IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BASIC CAPITAL MANAGEMENT, INC., et al., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:17-CV-1147-D |
| DYNEX CAPITAL, INC., et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiffs Basic Capital Management, Inc. ("BCM"), American Realty Trust, Inc. ("ART"), and Transcontinental Realty Investors, Inc. ("TRI") bring this action against defendants Dynex Capital, Inc. ("Dynex") and Dynex Commercial, Inc. ("DCI") to recover on claims for fraudulent transfer, alter ego, and conspiracy. Dynex and DCI move to dismiss plaintiffs' state-court original petition ("petition"). For the reasons that follow, the court grants Dynex's and DCI's motions to dismiss and grants plaintiffs leave to file an amended complaint.

I

Because this case is the subject of a prior memorandum opinion and order, *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 2017 WL 5197145, at *1 (N.D. Tex. Nov. 7, 2017) (Fitzwater, J.), the court will recount only the background facts and procedural history that are pertinent to this decision.

Plaintiffs' suit relates to a case filed nearly two decades ago. Dynex and DCI are real

estate lending companies. They entered into a transaction with BCM, acting on behalf of ART and TRI, which included two loan commitments—one to borrow $33.4 million to acquire and develop three buildings in New Orleans, and one to borrow $160 million to develop commercial and multifamily properties (the "$160 Million Commitment"). In 1999 BCM, ART, and TRI sued DCI in Texas state court, alleging five claims related to the breach of the $160 Million Commitment.[1] In 2000 Dynex was added as a defendant in the state court action. The jury found DCI liable for breaching the $160 Million Commitment, but found that Dynex was not liable for any claims related to the $160 Million Commitment.[2] In 2004 the trial court granted Dynex's and DCI's post-verdict motions for judgment notwithstanding the verdict and entered a take-nothing judgment against both DCI and Dynex. Plaintiffs appealed the take-nothing judgment against DCI but did not appeal the take-nothing judgment in favor of Dynex. After appeals to the court of appeals and the Supreme Court of Texas, the trial court in 2015 entered a final judgment against DCI, awarding plaintiffs damages for breach of the $160 Million Commitment. In April 2017 plaintiffs filed the present action in state court in an attempt to collect against Dynex based

---

[1] Dynex made one loan to TRI under the $160 Million Commitment in 1998, but, several months later, it allegedly refused to loan additional funds to BCM, even though there was $154 million remaining on the Commitment. Dynex refused to fund tenant improvements in New Orleans unless the BCM affiliates agreed to cancel the remainder of the $160 Million Commitment.

[2] The court does not detail the holdings of the state courts regarding the New Orleans loan agreement because the final state court judgment did not involve any liability or damages against defendants for breach of that particular agreement.

on the state court judgment against DCI. These claims are all based on plaintiffs' allegations that, beginning in 1999 and leading up to and through the appellate process, Dynex and DCI attempted to evade judgment creditors through a series of transfers of DCI's assets that eventually led to its insolvency. Their petition alleges claims for fraudulent transfer and civil conspiracy under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 (West 2018), and alter ego liability. Plaintiffs also seek other remedies relating to DCI and Dynex's allegedly fraudulent conduct.[3] In May 2017 Dynex and DCI removed the case to this court.

Dynex now moves under Fed. R. Civ. P. 12(b)(6) and 9(b) to dismiss plaintiffs' petition. DCI moves separately under Rule 8(a)(2), 9(b) and 12(b)(6) to dismiss the petition. Plaintiffs oppose the motion.

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendants' motions to dismiss, plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A

---

[3]Plaintiffs seek appointment of a receiver under Texas law to protect the value of their judgment by conserving the assets of Dynex and DCI. Pet. ¶ 52. They also seek exemplary damages and attorney's fees. *Id*. at ¶¶ 56, 58.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level [.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id*. (quoting

*Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

III

Dynex and DCI maintain that plaintiffs' pleading of an alter ego claim does not satisfy the pleading requirements of Rules 12(b)(6) and 9(b).

A

When a suit is removed to federal court based on diversity jurisdiction, district courts "apply the conflict of laws rule of the state in which it sits to determine which state's substantive law should be applied." *Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir. 1995) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Texas law, "only the laws of the jurisdiction of incorporation of a foreign corporation shall govern . . . the liability, if any, of shareholders of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement." Tex. Bus. Corp. Act Ann. art. 8.02 (West 2003); *see also Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 195 (S.D. Tex. 2008) (citing cases) ("[C]ourts have held that the law of the state of incorporation for the entity whose corporate form is at issue applies to determine whether to pierce the corporate veil.").

DCI and Dynex were both incorporated in Virginia. *See* Pet. ¶¶ 6-7 ("Defendant [Dynex] is a Virginia corporation with its principal place of business in Glen Allen,

Virginia," and "[DCI] is a Virginia corporation with its principal place of business in Glen Allen, Virginia."). Accordingly, the court applies Virginia law when determining whether plaintiffs have sufficiently pleaded an alter ego claim.

Under Virginia law, "[a] court can pierce the corporate veil only upon a showing that (1) the corporation was the 'alter ego, alias, stooge, or dummy' of the other entity; and (2) 'the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *Oliver v. Omega Protein, Inc.*, 2011 WL 1044403, at *5 (E.D. Va. Jan. 31, 2011), *rec. adopted*, 2011 WL 976619 (E.D. Va. Mar. 17, 2011) (citation omitted).

> The factors considered significant to this inquiry are the initial capitalization of the corporation, the non-payment of dividends by the corporation, the siphoning of funds by the shareholder, the failure to observe corporate formalities, the non-functioning of officers and directors, the absence of corporate records and the fact that the corporation is merely a facade for the dominant shareholder.

*U.S. for Use & Benefit of Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 393 (E.D. Va. 1994) (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685-87 (4th Cir. 1976).

B

In support of the first element, plaintiffs allege that "[d]efendants have used similar names, similar employees, have common ownership, share financial or other resources, and/or operate out of the same office space." Pet. ¶ 42. These allegations are conclusory. Plaintiffs have merely recited factors that courts have considered when evaluating alter ego claims, without including supporting facts. *See, e.g., Vitol, S.A. v. Primerose Shipping Co.*,

708 F.3d 527, 544 (4th Cir. 2013) (maritime law case) (district court considered shared office and overlap in ownership, officers, directors, and other personnel). Moreover, these allegations are insufficient to enable the court to reasonably infer that "[Dynex] exercised undue domination and control over the [DCI]." *Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (internal quotation marks omitted).

In support of the second element, plaintiffs allege that "[d]efendant entities have been used to perpetrate a fraud." Pet. ¶ 42. Plaintiffs merely assert a legal conclusion without alleging particular supporting facts. The court thus cannot reasonably infer that DCI was a device used to disguise wrongs, obscure fraud, or conceal crime.

Accordingly, the court dismisses plaintiffs' alter ego claim.[4]

IV

Dynex and DCI contend that plaintiffs' fraudulent transfer claim should be dismissed because it fails to satisfy the pleading requirements of Rule 12(b)(6) and 9(b) and because it has been extinguished by the statute of repose.

A

A creditor plaintiff may assert a claim under several provisions of TUFTA. To establish a claim under § 24.005, which may be invoked by present and future creditors, a

---

[4]Because the court is dismissing the alter ego claim on Rule 12(b)(6) grounds, it does not address Dynex's or DCI's argument that plaintiffs' alter ego claim is barred by res judicata and the statute of limitations.

plaintiff must prove that (1)[it] is a "creditor" with a claim against a "debtor"; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff. *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)).

TUFTA also classifies certain transfers that are fraudulent as to present creditors. Under § 24.006(a),

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

And under § 24.006(b),

> [a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Whether fraudulent intent is required depends on the provision of TUFTA at issue. *See E. Poultry Distribs., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3, 2001) (Lynn, J.) (comparing Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (requiring "intent to hinder, delay, or defraud" to prove fraudulent transfer), with Tex. Bus. & Com. Code Ann. § 24.005(a)(2) (providing for constructive fraudulent transfer that does not require intent to

defraud), and Tex. Bus. & Com. Code Ann. § 24.006 (same)). TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made. *See* Tex. Bus. & Com. Code Ann. §§ 24.008, 24.009; *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984) (addressing TUFTA's predecessor, the Uniform Fraudulent Conveyance Act, and noting that the statute "does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof.").

B

Plaintiffs have not alleged sufficient facts to plausibly state a claim for fraudulent transfer. The petition alleges, in relevant part: "[u]pon information and belief, after [DCI] was sued by Plaintiffs it transferred all or part of the Property to [Dynex] or other affiliates in order to place the Property out of the reach of [DCI's] creditors, including Plaintiffs." Pet. ¶ 29. Allegations made in such conclusory terms do not suffice to plausibly plead a fraudulent transfer claim.

Plaintiffs allege that they discovered

> evidence of potentially tens of millions of dollars in secured positions on real estate that were titled in the name of [DCI] and/or [Dynex], as well as assignments from [DCI] to [Dynex]. These UCC filings even covered property in which [DCI] had taken a secured position on property owned by one or more of the Plaintiffs.

*Id.* ¶ 24. Plaintiffs have not, however, sufficiently alleged facts that enable the court to draw the reasonable inference that DCI or Dynex acted with constructive or actual fraudulent

intent. Plaintiffs do not specify the provision of TUFTA on which they rely. But various allegations in the petition merely mirror § 24.005 or § 24.006 of TUFTA. For example, plaintiffs allege that "[DCI] transferred its Property to [Dynex] with the intent to hinder, delay, and defraud its creditors or other interested persons from obtaining that to which they are entitled which may become due." *Id.* ¶ 34; *cf.* Tex. Bus. & Com. Code Ann. § 24.005 (fraudulent transfer must be made "with actual intent to hinder, delay, or defraud any creditor of the debtor"). Plaintiffs also allege that "[t]he transfers were for less than reasonably equivalent value." *Id.*; *cf.* Tex. Bus. & Com. Code Ann. § 24.005 (fraudulent transfer made when debtor makes transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation"). Plaintiffs aver that "[a]t the time the transfers were made, [DCI] was insolvent or became insolvent as a result of the transfers." *Id.*; *cf.* Tex. Bus. & Com. Code Ann. § 24.006 ("debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."). Finally, plaintiffs allege that "the transfers were made to an insider of [DCI] when [DCI] was insolvent, and the insider had reasonable cause to believe that [DCI] was or would become insolvent." *Id.*; *cf.* Tex. Bus. & Com. Code Ann. § 24.006 (fraudulent transfer "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent"). Such threadbare recitations of the elements of a fraudulent transfer cause of action are insufficient to enable the court to reasonably infer that Dynex and DCI are liable for fraudulent transfers under TUFTA. Accordingly, the court grants Dynex's and

DCI's motions to dismiss plaintiffs' fraudulent transfers claim.[5]

V

Dynex and DCI maintain that plaintiffs' conspiracy claim should be dismissed because the underlying tort claim—fraudulent transfer—has been dismissed. Because plaintiffs agree to dismiss their conspiracy claim without prejudice, the court grants Dynex's and DCI's motions to dismiss plaintiffs' conspiracy claim.

VI

Plaintiffs move in the alternative for leave to replead their fraudulent transfer and alter ego claims. DCI maintains that, because the alleged fraudulent acts fall outside the statute of limitations and because the alter ego claim is barred by res judicata, leave to amend would be futile and should be denied.

The court recognizes that futility of amendment is properly considered when deciding whether to grant leave to amend. *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) ("leave to amend need not be granted when it would be futile to do so"). Nevertheless, the court's almost unvarying practice when futility is raised is to address the merits of the claim in the context of a Rule 12(b)(6) or Rule 56 motion.

---

[5]Because the court is dismissing the fraudulent transfers claim on Rule 12(b)(6) and 8(a)(2) grounds, it does not address DCI's and Dynex's arguments that plaintiffs' fraudulent transfer claims are barred by the statute of repose (including the argument that plaintiffs have alleged "fraud on the court"). The court also does not address whether Rule 9(b) applies to plaintiffs' alter ego claim or whether plaintiffs's allegations in the petition satisfy heightened particularity required by Rule 9(b).

> The court only infrequently considers the merits of new causes of action in the context of Rule 15(a). The court prefers instead to do so in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer. Therefore, the court suggests no view regarding the merits of these claims, leaving that question to a decision in response to an appropriate motion.

*Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *2 (N.D. Tex. Feb. 7, 2002) (Fitzwater, J.).

Although the court is granting defendants' motions to dismiss, it will permit plaintiffs to replead. *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") (internal quotation marks and citation omitted). Plaintiffs are often able to state plausible claims for relief when amending after a motion to dismiss has been granted. *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19, 2010) (Fitzwater, C.J.) (after twice granting motions to dismiss, concluding that plaintiff's second amended complaint stated claim on which relief could be granted). Because plaintiffs have stated that they are willing to cure any defects that the court identifies, the court grants plaintiffs 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

\* \* \*

For the reasons explained, the court grants Dynex's and DCI's motions to dismiss.

The court grants plaintiffs 28 days from the date this memorandum opinion and order is filed to file an amended complaint.

**SO ORDERED**.

May 7, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE