IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BASIC CAPITAL MANAGEMENT, INC., et al., | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:17-CV-1147-D |
| DYNEX CAPITAL, INC., et al., | § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

In this action asserting claims for fraudulent transfer, civil conspiracy, and alter ego liability, defendants move—in five separate motions—to dismiss plaintiffs' first amended complaint under Fed. R. Civ. P. 8(a)(2), 9(b), and 12(b)(6). Three defendants also move to dismiss for lack of personal jurisdiction under Rule 12(b)(2). The principal merits question presented is whether plaintiffs have sufficiently amended their state-court original petition ("petition") to state a claim on which relief can be granted. The court must also decide whether it can exercise personal jurisdiction over three defendants under a conspiracy theory of personal jurisdiction. For the reasons explained, the court concludes that plaintiffs have remedied certain errors, but have not yet sufficiently stated their claims. It also holds that it lacks personal jurisdiction over three defendants. The court therefore grants defendants' motions to dismiss, but it also grants plaintiffs leave to file a second amended complaint.

This case is the subject of two prior memorandum opinions and orders. *See Basic Capital Mgmt., Inc. v. Dynex Capital, Inc. (Basic Capital II)*, 2018 WL 2100041 (N.D. Tex. May 7, 2018) (Fitzwater, J.); *Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 2017 WL 5197145 (N.D. Tex. Nov. 7, 2017) (Fitzwater, J.). The court will therefore recount only the background facts and procedural history that are pertinent to this decision.

This suit, brought by plaintiffs Basic Capital Management, Inc. ("BCM"), Transcontinental Realty Investors, Inc. ("TRI"), and Michael J. Quilling as Receiver of American Realty Trust, Inc. ("ART"),[1] relates to a lawsuit filed nearly two decades ago. Defendants Dynex Capital, Inc. ("Dynex Capital") and Dynex Commercial, Inc. a/k/a DCI Commercial, Inc. ("DCI") are real estate lending companies. They entered into a transaction with plaintiff BCM, acting on behalf of plaintiffs ART and TRI, that included two loan commitments—one to borrow $33.4 million to acquire and develop three buildings in New Orleans, and one to borrow $160 million to develop commercial and multifamily properties (the "$160 Million Commitment"). In 1999 BCM, ART, and TRI sued DCI in Texas state

---

[1]Plaintiffs' first amended complaint is ambiguous concerning whether there is a fourth plaintiff. On page 1, "Michael J. Quilling, as the duly appointed and qualified Receiver of Dynex Commercial, Inc.," is listed as a plaintiff. And the case caption lists "DYNEX COMMERCIAL, INC." as a plaintiff. In § I(1)-(3) of the first amended complaint, however, only three plaintiffs are listed. Dynex Commercial a/k/a DCI Commercial, Inc., is designated as a defendant. *See* § I(5). And it has filed one of the motions to dismiss that the court is considering today. For purposes of this memorandum opinion and order, the court will treat this party only as a defendant. But plaintiffs should clear up this ambiguity in their second amended complaint.

court, alleging claims related to the breach of the $160 Million Commitment. In 2000 Dynex Capital was added as a defendant in the state court action. In 2004, shortly before the jury rendered a verdict, at least one of the plaintiffs researched and printed out UCC filings that covered assets in which DCI was listed as a secured party. The jury generally found in favor of BCM, ART, and TRI, but the trial court granted Dynex Capital's and DCI's post-verdict motions and entered a take-nothing judgment. After appeals to the court of appeals and the Supreme Court of Texas, the trial court in 2015 entered a final judgment against DCI, awarding BCM, ART, and TRI damages for breach of the $160 Million Commitment ("2015 final judgment").

In April 2017 plaintiffs filed the instant suit in state court against Dynex Capital and DCI, alleging claims for fraudulent transfer and civil conspiracy under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 (West 2018), and alter ego liability. Plaintiffs alleged that Dynex Capital and DCI engaged in a series of transfers of DCI's assets that rendered DCI insolvent and unable to pay the damages awarded in connection with the 2015 final judgment. Plaintiffs also sought other remedies relating to Dynex Capital and DCI's allegedly fraudulent conduct.[2] After removing the case to this court, Dynex Capital and DCI each moved to dismiss plaintiffs' petition. Concluding that plaintiffs had failed to allege sufficient factual allegations to support their claims, the court

---

[2]Plaintiffs sought appointment of a receiver under Texas law to protect the value of their judgment by conserving the assets of Dynex Capital and DCI. They also sought exemplary damages and attorney's fees.

granted both motions to dismiss on Rule 12(b)(6) and 8(a)(2) grounds and granted plaintiffs leave to file an amended complaint.

Plaintiffs timely filed a first amended complaint that brings identical claims and seeks identical remedies, but adds a variety of allegations and exhibits, as well as three defendants: Stephen Benedetti ("Benedetti"), ICD Holding, Inc. ("ICD"), and Dynex Holding, Inc. ("Dynex Holding"). The new allegations and exhibits are largely derived from the UCC filings compiled in 2004, a litigation cost sharing agreement between Dynex Capital and DCI, and an April 2018 oral deposition of Benedetti, who was asked, *inter alia*, about the UCC filings and the litigation cost sharing agreement.

Dynex Capital and DCI now each move to dismiss plaintiffs' first amended complaint under Rule 8(a)(2), 9(b) and 12(b)(6). Benedetti, ICD, and Dynex Holding each move under Rule 8(a)(2), 9(b), 12(b)(2), and 12(b)(6) to dismiss the first amended complaint. Plaintiffs oppose defendants' motions in two separate responses.[3]

II

The court first considers Benedetti's, ICD's, and Dynex Holding's motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

A

"When a nonresident defendant presents a motion to dismiss for lack of personal

---

[3]The first response opposes Dynex Capital's and DCI's motions to dismiss and is referred to throughout as "Ps. Resp. I." The second response opposes Benedetti's, ICD's, and Dynex Holding's motions to dismiss and is referred to throughout as "Ps. Resp. II."

jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985)). The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over these defendants would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines (1) the defendant's burden, (2) the forum state's interests, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the state's shared interest in fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

A defendant's contacts with the forum may support either specific or general jurisdiction over the defendant. *Mink*, 190 F.3d at 336. "For the court properly to assert specific personal jurisdiction, the defendant must have 'purposefully directed' his activities at residents of the forum, and the litigation must result from alleged injuries that 'arise out of or relate to' the defendant's activities directed at the forum." *Archer & White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23, 2003) (Fitzwater, J.) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (quoting *Mink*, 190 F.3d at 336). "[A] court may assert jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (first brackets added) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Plaintiffs argue that this court has specific jurisdiction over Benedetti, ICD, and Dynex Holding.

When deciding a motion to dismiss for lack of personal jurisdiction, the court is not limited to considering the facts pleaded in the complaint. *See Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Rather, "the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Tendeka, Inc. v. Glover*, 2014 WL 978308, at *3 (S.D. Tex. Mar. 12, 2014) (Rosenthal, J.) (internal quotations omitted). "The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

Plaintiffs' first amended complaint fails to address the court's personal jurisdiction over Benedetti, ICD, and Dynex Holding. In plaintiffs' opposition to the motions to dismiss of Benedetti, ICD, and Dynex Holding, they maintain that the court has specific jurisdiction under the conspiracy theory of jurisdiction.[4] Benedetti, ICD, and Dynex Holding respond that the conspiracy theory of personal jurisdiction has been expressly rejected by the Supreme Court of Texas and the Fifth Circuit.

To establish specific personal jurisdiction via a conspiracy theory, the court must consider "whether the plaintiffs made a prima facie showing of minimum contacts with [Texas] by each . . . defendant based on [the defendant's] civil conspiracy . . . to commit an intentional or willful act, which was carried out and resulted in damage to the plaintiffs in the state." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 632 (5th Cir. 1999); *accord Delta Brands Inc. v. Danieli Corp.*, 99 Fed. Appx. 1, 6 (5th Cir. 2004) (per curiam); *Eagle Metal Prods., LLC v. Keymark Enters., LLC*, 651 F.Supp.2d 577, 593 (N.D. Tex. 2009) (Lynn, J.) (rejecting application of "conspiracy theory" of jurisdiction based on Fifth Circuit case law,

---

[4]The opposition may also be read as asserting that the allegations contained in plaintiffs' first amended complaint support the effects theory or the alter ego theory of personal jurisdiction. Neither theory can support a *prima facie* case of personal jurisdiction over Benedetti, ICD, or Dynex Holding given the current factual allegations. The effects theory, derived from *Calder v. Jones*, 465 U.S. 783, 789 (1984), "is not a substitute for a nonresident's minimum contacts that demonstrate purposeful availment of the benefits of the forum state." *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997). And, although Texas law (not Virginia law) may apply for the jurisdictional alter ego analysis, *see Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010), the alter ego theory of jurisdiction fails for those reasons discussed *infra*, among others.

including *Delta Brands*).  "Each defendant's contacts with the forum must be analyzed individually, and a defendant cannot be subject to personal jurisdiction solely because he participated in an alleged conspiracy with a co-conspirator who had contacts with Texas." *Logan Int'l Inc. v. 1556311 Alberta Ltd.*, 929 F.Supp.2d 625, 630-31 (S.D. Tex. 2012).

Plaintiffs contend that their "claims are based on allegations that the conspirators directed intentionally tortious conduct at them, residents of Texas, intending to cause (and actually causing) them injuries in Texas."  Ps. Resp. II 19.  But plaintiffs have not alleged any contacts with Texas by Benedetti, ICD, or Dynex Holding, nor have plaintiffs alleged that any conspiratorial behavior occurred in Texas.  *See Eagle Metal Prods.*, 651 F.Supp.2d at 594.  Indeed, the only parties mentioned by name within the civil conspiracy claim (or fraudulent transfer claim, for that matter) are Dynex Capital and DCI.  Plaintiffs do not sufficiently allege that Benedetti, ICD, or Dynex Holding played a role in a conspiracy, much less that they purposely directed any efforts towards Texas residents.  These omissions are fatal to plaintiffs' ability to make a *prima facie* case of personal jurisdiction on the basis of the conspiracy theory.  Accordingly, the court grants the motions of Benedetti, ICD, and Dynex Holding to dismiss for lack of personal jurisdiction, but it also grants plaintiffs leave to replead the grounds on which they rely for the exercise of personal jurisdiction.

## III

The court next turns to defendants' motions to dismiss pursuant to Rules 8(a), 9(b), and 12(b)(6).

### A

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive defendants' motions to dismiss, plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual

allegations,'" it demands more than "labels and conclusions." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"Rule 9(b) imposes a heightened pleading standard for fraud claims and requires that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)), *aff'd*, 514 Fed. Appx. 513 (5th Cir. 2013) (per curiam). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (quoting *Benchmark Elecs.*, 343 F.3d at 724) (internal quotation marks omitted). More colloquially, plaintiffs must plead the "who, what, when, where, and how" of the fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

B

Defendants contend that plaintiffs' fraudulent transfer claim should be dismissed because it fails to satisfy the pleading requirements of Rule 8(a), 9(b), and 12(b)(6) and because it has been extinguished by the statute of repose.

1

A creditor plaintiff may assert a claim under several provisions of TUFTA. To establish a claim under § 24.005, which can be invoked by present and future creditors, "a plaintiff must prove that (1) [it] is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 344 (5th Cir. 2014) (per curiam) (citing *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 203-05 (Tex. App. 2013, pet. denied)).

TUFTA also classifies certain transfers that are fraudulent as to present creditors. Under § 24.006(a),

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

And under § 24.006(b),

> [a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Whether fraudulent intent is required depends on the provision of TUFTA at issue. *See E. Poultry Distribs., Inc. v. Yarto Puez*, 2001 WL 34664163, at *2 (N.D. Tex. Dec. 3,

2001) (Lynn, J.) (comparing Tex. Bus. & Com. Code Ann. § 24.005(a)(1) (requiring "intent to hinder, delay, or defraud" to prove fraudulent transfer), with Tex. Bus. & Com. Code Ann. § 24.005(a)(2) (providing for constructive fraudulent transfer that does not require intent to defraud), and Tex. Bus. & Com. Code Ann. § 24.006 (same)).  TUFTA allows recovery against the debtor, the transferee, or the person for whose benefit the transfer was made.  *See* Tex. Bus. & Com. Code Ann. §§ 24.008, 24.009; *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984) (addressing TUFTA's predecessor, the Uniform Fraudulent Conveyance Act, and noting that the statute "does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient thereof.").

2

In their first amended complaint, plaintiffs have not alleged sufficient facts to plausibly state a claim for fraudulent transfer, although they have remedied certain errors. The first amended complaint alleges, as did the petition, that: "[a]fter [DCI] was sued by Plaintiffs it transferred all or part of the Property to Dynex Capital or other affiliates in order to place the Property out of the reach of [DCI's] creditors, including Plaintiffs."  1st Am. Compl. ¶ 30.  And plaintiffs still assert that they discovered

> evidence of potentially Tens of Millions of Dollars in secured positions on real estate that were titled in the name of [DCI] and/or Dynex Capital, as well as assignments from [DCI] to Dynex Capital. These UCC filings even covered property in which [DCI] had taken a secured position on property owned by one or more of the Plaintiffs.

- 13 -

*Id.* ¶ 25. Plaintiffs have added assertions concerning a UCC-1 notebook of transactions relating to Dynex Capital and DCI, and have attached multiple UCC financing statements to their first amended complaint. Not until their opposition to the motions to dismiss, however, did plaintiffs specify the transfers of which they complain and the specific provision of TUFTA[5] on which they rely.[6]

In detailing the fraudulent transfer claim in their first amended complaint, plaintiffs rely on similar allegations to those in their petition, several of which remain unsubstantiated even by the over one thousand pages of exhibits. For example, plaintiffs continue to summarily allege that "[t]he transfers were for less than reasonably equivalent value." 1st Am. Compl. ¶ 70. And, without further clarity on the property being transferred and the circumstances under which it was transferred, the court cannot agree that fraudulent intent is "obvious given the timing [of the transfers], i.e. during the pendency of the State Action."

---

[5]The court does not suggest that a pleading must cite the statute on which the pleader relies. *See Johnson v. City of Shelby*, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (reversing holding of court of appeals that plaintiffs seeking relief under 42 U.S.C. § 1983 must cite the statute expressly, and concluding that, even after *Twombly* and *Iqbal*, plaintiffs need only plead the *factual* basis of their claims). But here, the absence of a citation to a specific provision of TUFTA, combined with the factual deficiencies in the first amended complaint, contributes to the court's inability to draw the reasonable inference that plaintiffs have pleaded a plausible claim.

[6]Plaintiffs express in both oppositions to the motions to dismiss that they have "clearly" pleaded their claim pursuant to § 24.005(a)(1) and that "[t]he 40 assignments from DCI to Dynex Capital are the subject of Plaintiffs' TUFTA § 24.005(a)(1) claim." Ps. Resp. I 22; Ps. Resp. II 32. The court does not decide at this time whether plaintiffs' claim, as formulated in their responses, states a claim on which relief can be granted. *See Price v. Am.'s Servicing Co.*, 2013 WL 1914939, at *6 n. 5 (N.D. Tex. May 9, 2013) (Fitzwater, C.J.).

*See id.* One of the factors the court may consider when determining actual intent under § 24.005(a)(1) is whether "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." Tex. Bus. & Com. Code Ann. § 24.005(b)(4). But given the current pleading, defendants and the court are left guessing as to the precise transfers on which plaintiffs' base their claim. This becomes especially problematic if plaintiffs are pleading their fraudulent transfer claim pursuant to § 24.005(a)(1), because that provision of TUFTA requires actual intent and is likely subject to Rule 9(b). *See Clapper v. Am. Realty Inv'rs, Inc.*, 2018 WL 3868703, at *8 (N.D. Tex. Aug. 14, 2018), *recons. denied*, 2018 WL 6011182 (N.D. Tex. Nov. 16, 2018) (Fitzwater, J.) (explaining that, although an open question in the Fifth Circuit, several members of this court have applied the enhanced pleading requirements of Rule 9(b) where plaintiffs seek to establish the actual intent of the debtor).

Thus although plaintiffs have attached multiple UCC financing statements to their first amended complaint, these documents have not sufficiently transformed what the court previously deemed threadbare recitations of the elements into a pleading that enables the court to reasonably infer that Dynex Capital and DCI are liable for fraudulent transfers under TUFTA. Nor does the first amended complaint state a claim for fraudulent transfer against Benedetti, ICD, or Dynex Holding. These parties are not mentioned in the fraudulent transfer claim, and there are no factual assertions in the first amended complaint to support the reasonable inference that Benedetti, ICD, or Dynex Holding transferred, received, or otherwise participated in a specific exchange of property. Accordingly, the court grants

defendants' motions to dismiss plaintiffs' fraudulent transfer claim.[7]

## C

Defendants maintain that plaintiffs' conspiracy claim should be dismissed because the underlying tort claim (fraudulent transfer) must be dismissed and because plaintiffs have only alleged that defendants are general creditors to the allegedly fraudulently transferred property. The court agrees.

First, "[c]ivil conspiracy is not an independent cause of action, but a derivative claim dependent on an underlying tort." *Mezz III, LLC v. Keenan*, 2017 WL 6761062, at *4 (N.D. Tex. Dec. 28, 2017) (McBryde, J.); *see also Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 709 (5th Cir. 2009). Civil conspiracy claims should be dismissed where plaintiffs fail to allege a predicate tort. *See Berry v. Lee*, 428 F.Supp.2d 546, 562 (N.D. Tex. 2006) (Fitzwater, J.). Thus because the court is granting defendants' motions to dismiss plaintiffs' fraudulent transfer claim, it also dismisses their conspiracy claim.

Second, "a mere general creditor may take advantage of the Texas fraudulent conveyance statute, but . . . may not recover damages for conspiracy to commit a fraudulent

---

[7]Because the court is dismissing the fraudulent transfer claim under Rules 12(b)(6) and 8(a)(2), it will not address DCI's and Dynex Holding's contentions that plaintiffs' fraudulent transfer claims are barred by the statute of repose (including the argument that plaintiffs have alleged "fraud on the court"). The court notes, however, that "[a]pplication of the TUFTA 'discovery rule' is a factual question generally inappropriate for resolution on a motion to dismiss." *Official Stanford Inv'rs Comm. v. Greenberg Traurig, LLP*, 2014 WL 12572881, at *10 (N.D. Tex. Dec. 17, 2014) (Godbey, J.). The court likewise does not address the question whether Rule 9(b) applies to plaintiffs' alter ego claim or whether the allegations of plaintiffs' first amended complaint satisfy the heightened particularity requirement of Rule 9(b).

conveyance." *Mack v. Newton*, 737 F.2d 1343, 1362 (5th Cir. 1984) (footnote omitted). This is because

> a mere general creditor without a lien has no interest in the debtor's property, and hence is not legally injured by any conspiracy with the debtor to aid him in disposing of his property in order to evade the payment of his financial obligations, and cannot maintain an action based upon such conspiracy.

*Clapper v. Am. Realty Inv'rs, Inc.*, 2015 WL 3504856, at *4-5 (N.D. Tex. June 3, 2015) (Fitzwater, J.) (quoting *Stonecipher's Estate v. Butts' Estate*, 591 S.W.2d 806, 808 (Tex. 1979)). At best, plaintiffs have alleged that they were general creditors as to any allegedly transferred property because they "neither explicitly plead nor contend in their response that they had a judgment lien" on any of DCI's property. *Id.* at *5. Accordingly, because plaintiffs have alleged no more than that they were general creditors as to any allegedly fraudulently transferred property, and because, under Texas law, a general creditor cannot recover damages for conspiracy to commit a fraudulent conveyance, plaintiffs have failed to state a plausible conspiracy claim.

## D

Defendants maintain that plaintiffs' pleading of an alter ego claim does not satisfy the pleading requirements of Rule 8(a), 9(b), and 12(b)(6).

### 1

As the court explained in *Basic Capital II*—and as all parties concede—Virginia law applies when determining whether plaintiffs have sufficiently pleaded alter ego liability.

Under Virginia law, "[a] court can pierce the corporate veil only upon a showing that (1) the corporation was the 'alter ego, alias, stooge, or dummy' of the other entity; and (2) 'the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *Oliver v. Omega Protein, Inc.*, 2011 WL 1044403, at *5 (E.D. Va. Jan. 31, 2011) (citation omitted), *rec. adopted*, 2011 WL 976619 (E.D. Va. Mar. 17, 2011).

> The factors considered significant to this inquiry are the initial capitalization of the corporation, the non-payment of dividends by the corporation, the siphoning of funds by the shareholder, the failure to observe corporate formalities, the non-functioning of officers and directors, the absence of corporate records and the fact that the corporation is merely a facade for the dominant shareholder.

*U.S. for Use & Benefit of Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 393 (E.D. Va. 1994) (citing *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685-87 (4th Cir. 1976)).

2

Defendants contend, *inter alia*, that plaintiffs have not alleged facts showing that any party is the alter ego of another and that plaintiffs have not sufficiently distinguished the actions of any defendant.

The court concludes that plaintiffs' assertion of alter ego liability must be dismissed for several reasons. First, the first amended complaint contains the same allegations that the court deemed to be conclusory in *Basic Capital II*. Even more problematic, the first amended complaint contains references to "defendants" and "defendant entities" that are *less* clear than those of plaintiffs' petition because the defendant groups now include more parties than

solely Dynex Capital and DCI. In other words, because "defendants" now comprise Dynex Capital, DCI, Benedetti, ICD, and Dynex Holding, and the term "defendant entities" includes all of the aforementioned, excluding Benedetti, the first amended complaint is not entirely clear which corporate veil plaintiffs seek to pierce or which defendants were allegedly exercising undue dominion and control over others.

Moreover, contrary to plaintiffs' assertions in response to defendants' motions to dismiss, many additions that plaintiffs have made to their alter ego claim continue to employ tactics of conclusory repetition of factors as opposed to stating factual allegations. *See* 1st Am. Compl. ¶¶ 79-80. Indeed, it is not sufficient to assert that over 250 pages of deposition testimony "show" or "demonstrate" the factors that Virginia courts have deemed significant to the alter ego inquiry. *See id.* ¶¶ 61, 79-80.

Plaintiffs have added allegations in an effort to bolster the second element of alter ego and show that DCI was a device or sham used to disguise wrongs, obscure fraud, or conceal crime. *See, e.g., id.* ¶ 43 (alleging that Dynex Capital and DCI entered a litigation cost sharing agreement to obscure fraud); *id.* ¶ 80 (alleging a series of fraudulent transfers). Still, these allegations do not alone state a plausible claim for alter ego liability because Virginia law requires that a plaintiff show *both* that "(1) the corporation was the 'alter ego, alias, stooge, or dummy' of the other entity; and (2) 'the corporation was a device or sham used to disguise wrongs, obscure fraud, or conceal crime.'" *Oliver*, 2011 WL 1044403, at *5. Plaintiffs have simply not alleged facts sufficient to support their contention that a corporate entity should be disregarded in this case. Accordingly, the court dismisses plaintiffs' alter

ego claim.[8]

IV

Plaintiffs expressly request leave to replead the court's personal jurisdiction over Benedetti, ICD, and Dynex Holding, as well as leave to replead their fraudulent transfer, conspiracy, and alter ego liability claims. Defendants maintain that, because plaintiffs have not adequately pleaded their claims for a second time and because the claims remain barred by the statute of limitations and res judicata, leave to amend would be futile and should be denied.

The court recognizes that futility of amendment is properly considered when deciding whether to grant leave to amend. *See, e.g., F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) ("[L]eave to amend need not be granted when it would be futile to do so."). This holds true as well in the context of pleading personal jurisdiction. The court recently denied a request for leave to amend where the plaintiff had already had an opportunity to present evidence in support of personal jurisdiction and had failed to make the required *prima facie* showing. *Shippitsa Ltd. v. Slack*, 2019 WL 277613, at *6 (N.D. Tex. Jan. 22, 2019) (Fitzwater, J.) (citing cases that support denying leave to amend based on futility of amendment in context of challenge to personal jurisdiction). Nevertheless, the court's almost unvarying practice—as expressed, for example, in *Basic Capital II*—when futility is raised

---

[8]As in *Basic Capital II*, because the court is dismissing the alter ego claim on Rule 12(b)(6) grounds, it will not address defendants' argument that plaintiffs' alter ego claim is barred by res judicata and the statute of limitations.

is to address the merits of the claim in the context of a Rule 12(b)(6) or Rule 56 motion.

> The court only infrequently considers the merits of new causes
> of action in the context of Rule 15(a).  The court prefers instead
> to do so in the context of a Rule 12(b)(6) or Rule 56 motion,
> where the procedural safeguards are surer.  Therefore, the court
> suggests no view regarding the merits of these claims, leaving
> that question to a decision in response to an appropriate motion.

*Poly-Am., Inc. v. Serrot Int'l Inc.*, 2002 WL 206454, at *2 (N.D. Tex. Feb. 7, 2002)

(Fitzwater, J.).  Accordingly, although the court is granting defendants' motions to dismiss,

it will permit plaintiffs to file a second amended complaint for purposes of adequately

pleading the court's personal jurisdiction and pleading a plausible claim on which relief can

be granted.[9]  *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D.

Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity

to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are

incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a

manner that will avoid dismissal.") (internal quotation marks and citation omitted).  Plaintiffs

are often able to state plausible claims for relief when amending after a motion to dismiss has

been granted.  *See, e.g., Reneker v. Offill*, 2010 WL 1541350, at *2, *7 (N.D. Tex. Apr. 19,

2010) (Fitzwater, C.J.) (after twice granting motions to dismiss, concluding that plaintiff's

---

[9]Some of the defects identified in this memorandum opinion and order and in
defendants' motions to dismiss may be incurable, but the court will permit plaintiffs to
replead to ensure that they have been given a fair opportunity to avoid dismissal of claims
based on pleading deficiencies alone.  *See Price*, 2013 WL 1914939, at *9.  Further, because
the court is permitting plaintiffs to replead, it denies without prejudice DCI's alternative
motion to strike portions of plaintiffs' first amended complaint as moot.

second amended complaint stated claim on which relief could be granted).

Because plaintiffs have stated that they are willing to cure any defects that the court identifies, the court grants them 28 days from the date this memorandum opinion and order is filed to file a second amended complaint. The court reiterates, however, that *Twombly* and *Iqbal* do not dispense with Rule 8(a)(2)'s mandate that the complaint contain "a *short* and plain statement of the claim showing that the pleader is entitled to relief." And Rule 9(b) requires *particularity*, not obscurity. This is not to say, of course, that the complaint should be conclusory. Rather, it is to emphasize that plaintiffs should take care to avoid including allegations and exhibits that only serve to obfuscate their claims. "A complaint can be long-winded, even prolix, without pleading with particularity . . . . [S]uch a garrulous style is not an uncommon mask for an absence of detail." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).

\* \* \*

For the reasons explained, the court grants defendants' motions to dismiss. DCI's alternative motion to strike portions of plaintiffs' first amended complaint is denied without prejudice as moot. The court grants plaintiffs 28 days from the date this memorandum opinion and order is filed to file a second amended complaint.[10]

---

[10]On January 17, 2019 plaintiffs filed an opposed motion for leave to supplement the record. This motion is best decided by the successor judge who receives this case following the undersigned's request that the case be reassigned due to taking senior status. The motion is therefore denied without prejudice to being re-filed under the schedule and procedures imposed by the successor judge.

**SO ORDERED**.

January 25, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE