UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BASIC CAPITAL MANAGEMENT, INC., et. al., | § § § | |
| *Plaintiffs*, | § § | Civil Action No. 3:17-CV-01147-X |
| v. | § § | |
| DYNEX CAPITAL, INC., et. al., | § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

In this action alleging fraudulent transfer and alter ego liability, defendants Dynex Commercial Inc. (Dynex Commercial) and Dynex Capital, Inc. (Dynex Capital) move to dismiss the claims of plaintiffs Basic Capital Management, Inc. (BCM), Transcontinental Realty Investors, Inc. (TCI), and Michael J. Quilling as court-appointed receiver for American Realty Trust, Inc. (ART) (collectively the plaintiffs) for failure to state a claim on which relief can be granted (collectively the motions to dismiss) [Docs. No. 78, 80].  The Court concludes that the plaintiffs have failed to state a claim as to both defendants and therefore **DISMISSES** with **PREJUDICE** the plaintiffs' claims against Dynex Commercial and Dynex Capital and **DENIES** the plaintiffs' requests for exemplary damages and attorney's fees.  Because dismissal of the plaintiffs' claims is dispositive, the Court **DISMISSES** as **MOOT** the defendants' pending motion to extend time to file summary judgment [Doc. No. 94] and any other pending motions.

# I.

The plaintiffs' second amended complaint [Doc. No. 75] states that Dynex Capital and Dynex Commercial, among other things, originated and serviced mortgage loans.[1] After Dynex Commercial provided ART and TCI a number of multi-million dollar real estate loans, it entered into two real estate loan commitments with BCM, who was operating on behalf of TCI and ART.[2] One commitment was for $33.4 million, and the other was for $160 million.[3] Several months later, BCM attempted to borrow additional funds under the $160 million commitment.[4] Dynex Commercial allegedly refused to provide any funds under this commitment and further refused to provide any funds under the $33.4 million commitment for any tenant improvements unless BCM cancelled the remainder of the $160 million commitment, which amounted to $154 million dollars.[5]

The plaintiffs sued Dynex Commercial on April 15, 1999 for breach of both the $160 million and $33.4 million commitments and Dynex Capital for other related claims.[6] The case was the 68th Judicial District Court in Dallas County, Texas, tried the case in January and February 2004, resulting in a jury verdict of over $30 million (including attorney's fees).[7] However, the trial court judge granted Dynex

---

[1] *Second Amended Complaint* [Doc. No. 75] ¶¶ 9–10.

[2] *Id.* ¶ 12.

[3] *Id.*

[4] *Id.* ¶ 13.

[5] *Id.*

[6] *Id.* ¶ 14.

[7] *Id.* ¶¶ 14–15.

Commercial's post-verdict motion for judgment notwithstanding the verdict and rendered a "take nothing" judgment against the plaintiffs.[8] After a lengthy appeals process, a final, non-appealable judgment in favor of the plaintiffs was entered on July 20, 2015 against Dynex Commercial; Dynex Capital was no longer a party to the case at that point.[9] The final judgment totaled over $55 million dollars.[10] On March 16, 2016, TCI served a request for production and a first set of interrogatories to aid in the enforcement of the judgment.[11] Dynex Commercial responded with answers and objections on May 2, 2016, which indicated that Dynex Commercial had ceased operations and had no assets that could be used to pay any of the final judgment.[12] Soon after, TCI served a notice of intent to service subpoena on non-party Dynex Capital, requesting the production of documents.[13] After some alleged stonewalling by Dynex Commercial and Dynex Capital on discovery motions, the plaintiffs began to obtain information that formed the basis of this lawsuit.[14]

The plaintiffs discovered that after the state court action commenced in 1999, Dynex Commercial divested all of its assets by transferring them to Dynex Capital.[15] In its complaint in this case, the plaintiffs specifically allege 25 transfers of

---

[8] *Id.* ¶ 15.

[9] *Id.* ¶ 16; *Notice of Removal*, Exhibit C [Doc. No. 1-3], at 346–49.

[10] *Second Amended Complaint* ¶ 16.

[11] *Id.* ¶ 18.

[12] *Id.*

[13] *Id.* ¶ 19.

[14] *Id.* ¶¶ 20–24.

[15] *Id.* ¶¶ 25–26.

commercial loans and security interests that occurred between 1999 and 2001.[16] As a result of these transfers, along with others, Dynex Commercial ceased operations at the end of 2000 and had no remaining assets as of January 1, 2001.[17]

Based in part off of these discoveries, the plaintiffs sued Dynex Commercial and Dynex Capital in the 191st District Court in Dallas County on April 26, 2017.[18] The plaintiffs alleged, among other things, that Dynex Commercial was an alter ego of Dynex Capital and that the 25 transfers made between 1999 and 2001 constituted fraudulent transfers under the Texas Uniform Fraudulent Transfers Act ("Fraudulent Transfers Act").[19] Shortly thereafter, the defendants removed the case to this Court on May 1, 2017 on the basis of diversity jurisdiction [Doc. No. 1]. In their second amended complaint filed on March 8, 2019, the plaintiffs have narrowed their claims to the fraudulent transfer and alter ego claims, along with seeking exemplary damages and attorney's fees pursuant to these claims.

## II.

With these facts and this procedural posture, the Court considers Dynex Capital and Dynex Commercial's motions to dismiss.

## A.

Under Federal Rule of Civil Procedure 12(b)(6), the Court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light

---

[16] *Id.* ¶¶ 27–51.

[17] *Id.* ¶ 52.

[18] *See generally Notice of Removal*, Exhibit C, at 1–17.

[19] *Id.*

most favorable to the plaintiff.'"[20] To survive a motion to dismiss, the plaintiffs must allege enough facts "to state a claim to relief that is plausible on its face."[21] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[22] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[23] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[24]

## B.

Dynex Capital and Dynex Commercial argue, among other things,[25] in their motions to dismiss that the plaintiffs' fraudulent transfer and alter ego claims are barred by the Fraudulent Transfer Act's statute of repose and res judicata respectively. Subsequently, the plaintiffs' claims for exemplary damages and attorney's fees are also barred, as they are contingent on the fraudulent transfer and alter ego claims. The Court agrees with this analysis. Because the Fraudulent

---

[20] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] *Id.*; *see Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

[24] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

[25] Because the Court agrees with Dynex Capital and Dynex Commercial that the Fraudulent Transfer Act's statute of repose and res judicata defenses dispose of the plaintiffs' claims, the Court need not address the defendants' other dispositive arguments.

Transfer Act's statute of repose and res judicata bar the plaintiffs' claims, the plaintiffs have failed to state a claim under Rule 12(b)(6) against Dynex Capital and Dynex Commercial.

## C.

A threshold issue raised by all parties is what facts, if any, this Court can and should judicially notice for Rule 12(b)(6) motions. Federal Rule of Evidence 201(b) states a court may judicially notice a fact that is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. If the contents of documents are subject to dispute, courts may judicially notice documents for their existence and the statements they contain and not to prove the truth of the contents in the documents.[26]

In *Meyers v. Textron, Inc.*,[27] the Fifth Circuit stated that district courts, when ruling on a Rule 12(b)(6) motion, must primarily look at the allegations in the complaint but may also take into account "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, [including] matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."[28] Fifth

---

[26] *See, e.g., Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (adopting a rule for courts to judicially notice the existence, and not the truth, of the contents of public disclosure documents required to be, and actually filed with, the SEC); *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 665 (N.D. Tex. 2011) (identifying holdings of cases within the district that are consistent with the Fifth Circuit's holding in *Lovelace*).

[27] 540 F. App'x 408, 409 (5th Cir. 2013).

[28] *Id.* at 409 (alteration added).

Circuit precedent makes clear that "public records" includes publicly available documents and transcripts and pleadings filed in state court.[29]

Because they are directly relevant to resolving the issues of this case, the Court takes judicial notice of Dynex Capital's 2002 Form 10-K report and the proceedings and record of the 1999 litigation before the 68th Judicial District Court. As the contents of these records are subject to dispute, the Court judicially notices these documents for their existence and of what statements they contain and not for the truth of their contents. These documents are all publicly available governmental filings and the existence of the documents, and the contents therein, cannot reasonably be questioned.

### D.

The plaintiffs allege Dynex Commercial's 25 loan transfers to Dynex Capital that ended 18 years ago (from 1999 to 2001) were fraudulent and violated section 24.005(a)(1) of the Texas Business and Commerce Code. Section 24.005(a)(1) states that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor."[30] But there is a catch. Section 24.010(a)(1), a statute of repose,[31] states that a cause of

---

[29] *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("[T]he district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand."); *Van Duzer v. U.S. Bank Nat. Ass'n*, 995 F. Supp. 2d 673, 684 (S.D. Tex.) ("[T]he court may take judicial notice of matters of public record, including pleadings filed in state court." (citing *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012), *aff'd*, 582 F. App'x 279 (5th Cir. 2014)).

[30] TEX. BUS. & COM. CODE § 24.005(a)(1).

[31] *Janvey v. Romero*, 817 F.3d 184, 188 (5th Cir. 2016) (stating that section 24.010(a)(1) is a statute of repose) [hereinafter *Janvey II*]. A statute of repose, unlike a statute of limitations, runs from a specified date without regard to the accrual of any cause of action. *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009). Additionally, unlike a statute of

action with respect to fraudulent transfer under section 24.005(a)(1) is extinguished if it is not brought "within four years after the transfer was made . . . or, if later, within one year after the transfer . . . was or reasonably could have been discovered by the claimant."[32] The one-year statute of repose deadline triggers after the fraudulent nature of the transfer is or reasonably could have been discovered.[33]

Granted, the question of whether a plaintiff reasonably could have discovered the fraudulent nature of a transfer is generally a question of fact for the fact-finder.[34] But at times, the issue can be so clear cut that it is appropriate to resolve at the motion to dismiss phase based on judicially noticed public records that were constructive notice of potentially fraudulent transfers. Indeed, the Fifth Circuit recently affirmed the granting of a motion to dismiss under the one-year repose statute deadline, based on the complaint, attachments to the complaint, documents referred to in the complaint, judicially noticed public records, and judicially noticed court records.[35]

The Fifth Circuit cases *Janvey I* and *Bilouris* are instructive in assessing whether a plaintiff has met section 24.010(a)(1)'s repose deadline. In *Janvey I*, the

---

limitations, the time set forth in a statute of repose cannot be tolled. *Id.* Once the repose date passes, no cause of action can be filed. Lastly, "while statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose takes away the right altogether, creating a substantive right to be free of liability after a specified time." *Id.*

[32] TEX. BUS. & COM. CODE § 24.010(a)(1).

[33] *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 194–95 (5th Cir. 2013) [hereinafter *Janvey I*].

[34] *Janvey II*, 817 F.3d at 189.

[35] *Bilouris as next friend of Biliouris v. Patman*, 751 F. App'x 603, 604–05 (5th Cir. 2019) (per curiam).

plaintiff was a court-appointed receiver over several corporations involved in what would later be found to be a massive Ponzi scheme.[36]  The receiver was tasked with preserving the resources of these corporations and pursuing the corporations' assets held by third parties as the result of fraudulent conveyances.[37]  To this end, the plaintiff brought a fraudulent transfer claim under section 24.005(a)(1) against the defendant.[38]  The defendant argued, in part, that the plaintiff failed to meet the repose deadline under section 24.010(a)(1).[39]

In evaluating whether the plaintiff had filed suit after repose barred the claim, the Fifth Circuit noted that the plaintiff had to hire an expert to examine the books and records of the corporations to determine whether any transfers were made fraudulently.[40]  Given the complexity of the transactions and the need to hire an expert to determine whether fraudulent transfers had even occurred, the Fifth Circuit found that the plaintiff could not reasonably have discovered the fraudulent nature of the transfers until the initiator of the Ponzi scheme himself pled guilty in another case less than a year earlier.[41]  As that guilty plea was entered less than a year prior to the suit, the plaintiff had filed suit before the repose deadline passed.[42] The Fifth Circuit was careful to note that the discovery of the fraudulent nature of

---

[36] *Janvey I*, 712 F.3d at 188–89.

[37] *Id.* at 189.

[38] *Id.* at 189, 194–95.

[39] *Id.* at 193.

[40] *Id.* at 197.

[41] *Id.*

[42] *Id.*

the transfers, and not just the existence of the transfers, was key to their finding.[43]

In *Bilouris*, the plaintiffs brought a fraudulent transfer claim against the defendant for transferring a parcel of land to his son to avoid paying a state district court judgment.[44] The defendant argued in a motion to dismiss that the repose statute in section 24.010(a)(1) barred the claim.[45] In contrast to *Janvey I*, the Fifth Circuit found that the plaintiffs could have reasonably known the fraudulent nature of the transfer years before the suit was brought.[46] The Fifth Circuit noted that the transfer occurred during the state court litigation and so the plaintiffs were on notice of its existence, as the warranty deed was filed in the county property records.[47] Moreover, a few months after the transfer was made, the plaintiffs took a deposition of the defendant's wife and so had an opportunity to discover the fraudulent nature of the land transfer at that point.[48] The Fifth Circuit went out of its way to contrast *Bilouris* with *Janvey I*, stating that the *Janvey I* plaintiff "was faced with a sophisticated, extensive, worldwide Ponzi scheme, and thus the point where the discovery rule activated was harder to suss out."[49] In contrast, the plaintiffs in *Bilouris* "had the resources and opportunity to discern the fraudulent nature of this single transaction when it was recorded."[50]

---

[43] *Id.* at 194–95, 197–98.

[44] *Bilouris*, 751 F. App'x at 604.

[45] *Id.*

[46] *Id.* at 605.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

The Court finds this case to be like the public activity in *Bilouris* and not like the hidden activity in *Janvey I*. The last of the 25 transfers the plaintiffs list in their second amended complaint was complete on October 29, 2001 and that, as of January 1, 2001, Dynex Commercial had no remaining assets. On March 28, 2002, Dynex Capital filed with the SEC a 10-K annual report, which states that transfers from Dynex Commercial to Dynex Capital were made from 1999 to 2001 and that Dynex Commercial "has no assets."[51] Corporate 10-K reports are hardly hidden from the public eye; they are available on the SEC's website. The statements within this report, regardless of their truth, were sufficient to put the plaintiffs on notice of the 25 transfers. Thus, as of March 28, 2002, the plaintiffs were on constructive notice of these transfers—in the same way the plaintiffs in *Bilouris* were on notice of the warranty deed filed in the county records.

The Fifth Circuit in *Janvey II* made it clear that the statute of repose deadline only triggers when a claimant knows or reasonably could have known both the existence of the transfer and the fraudulent nature of the transfer.[52] The 10-K annual report, as discussed above, put the plaintiffs on constructive notice of the existence of the transfers. Regarding knowledge of the fraudulent nature of the transfer, the plaintiffs were in ongoing litigation with the defendants when the annual 10-K report was filed. Once filed, the plaintiffs could have reasonably discovered the alleged fraudulent nature of the 25 transfers, especially given that Dynex Commercial having

---

[51] *Dynex Commercial's Appendix in Support of its Motion to Dismiss* [Doc. No. 79], at 1, 53.

[52] *Janvey II*, 817 F.3d at 188.

no assets meant it could not pay any potential judgment. Therefore, this case is also akin to *Bilious* in that the plaintiffs were in ongoing litigation with the defendant when the publicly documented transfer occurred.[53] So, the one-year repose deadline began to run on March 28, 2002, the date of the filing of the 10-K annual report.

The section 24.010(a)(1) repose statute requires the plaintiffs to bring forth a cause of action within one year of when the fraudulent nature of the transfers reasonably could have been discovered. The plaintiffs had constructive notice of the existence of the transfers and could have known their allegedly fraudulent nature on March 28, 2002. The plaintiffs did not file suit until April 26, 2017, 14 years after the one-year repose statute barred the claim. Therefore, the Court **DISMISSES** with **PREJUDICE** the plaintiffs' fraudulent transfer claims.

E.

In their remaining claim, the plaintiffs allege alter ego against Dynex Capital, claiming that Dynex Commercial was its mere tool or business conduit to perpetrate fraud and other malfeasances. In Dynex Capital's motion to dismiss, Dynex Capital argues that this claim is barred by res judicata, as it could have been raised during the initial state court litigation.

Under res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."[54] A finding of res judicata requires the presence of four elements:

---

[53] *Bilouris*, 751 F. App'x at 605.

[54] *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

"(1) the parties are identical or in privity; (2) the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and, (4) the same claim or cause of action was involved in both actions.[55]" Although res judicata is generally raised as an affirmative defense to be pleaded in an answer, it may be raised in a motion to dismiss, as was done here, when the facts are not controverted or are conclusively established.[56]  Judicially noticed facts may also be included in making this determination.[57]

The Court uses the transactional test to determine whether two suits involve the same claim or cause of action under the fourth element.  This test requires the Court to determine whether the two cases are based on "the same nucleus of operative facts."[58]  The nucleus of operative facts is not identical with the type of relief requested, substantive theories advanced, or types of rights asserted.[59]  If both cases are based on the same nucleus of operative facts, the prior judgment precludes any rights the plaintiff had with respect to any transactions in which the original action arose.[60]  What constitutes a transaction is to be "determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their

---

[55] *Meyers*, 540 F. App'x at 410 (citing *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 5th Cir. 2004)).

[56] *Id.* (citing *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005)).

[57] *Id.* (citing *Funk*, 631 F.3d at 783).

[58] *Warren v. Mortg. Elec. Registration Sys., Inc.*, 616 F. App'x 735, 738 (5th Cir. 2015).

[59] *Id.*

[60] *Id.* (citing *United States* v. *Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)).

treatment as a unit conforms to the parties' expectations or business understanding or usage.[61]"

*Hall v. Hodgkins* is instructive as to how the fourth element applies. 305 F. App'x 224, 228 (5th Cir. 2008). In *Hall*, the plaintiff filed suit against the defendants for barring him from membership in the Civil Air Patrol because he reported criminal acts and policy violations occurring within the Patrol.[62] The plaintiff had brought two prior lawsuits, which were both dismissed, alleging the Civil Air Patrol had wrongfully terminated his membership for reporting criminal acts and policy violations.[63] The Fifth Circuit found that, regardless of the fact that the plaintiff's claims were different between his lawsuits, the same transaction underlied all of the suits: that the defendants were punishing him for whistleblowing while he was working for the Patrol.[64] Thus, the Fifth Circuit found the fourth element satisfied and res judicata met.[65]

Here, the plaintiffs' alter ego claim meets all four elements of res judicata. The plaintiffs do not dispute the first three elements.[66] Regarding the fourth element, both suits revolve around a single transaction: Dynex Commercial's refusal to comply with the $160 million and $33.4 million loan commitments. This transaction is what

---

[61] *Hall v. Hodgkins*, 305 F. App'x 224, 228 (5th Cir. 2008) (quoting Restatement (Second) of Judgments § 24 (1982)).

[62] *Id.* at 225–26.

[63] *Id.* at 226.

[64] *Id.* at 229.

[65] *Id.*

[66] First, the plaintiffs and Dynex Capital were parties in the state district court suit. Second, the 68th Judicial District Court in Dallas County was a court of competent jurisdiction to render the judgments it made. Third, that court's July 20, 2015 judgment was a final judgment on the merits.

led to the state district court litigation and, when Dynex Commercial could not pay the judgment, led to the filing of this suit.

The facts involved in these two cases are also related in time, origin, and motivation because the plaintiffs could have brought their alter ego claim against Dynex Capital in the state district court litigation. In the state district court litigation, the plaintiffs' allegations in their complaints, and during trial, indicate they understood they could have brought such a claim. In their opening statement, they argued "there is not any difference between [Dynex Commercial and Dynex Capital].[67] Moreover, after trial, the plaintiffs requested the state district court judge make Dynex Capital jointly and severally liable for the breach of the $160 million commitment because Dynex Capital caused it.[68] Regardless of the truth of these statements, they show that the plaintiffs were cognizant of concerns that would give rise to an alter ego claim during the state district court litigation even though they never raised their alter ego claim at that time. Thus, both cases involve the same nucleus of operative facts and so the state district court judgment precludes the plaintiffs from exercising any rights in this suit that they failed to exercise in the state court litigation. As such, the plaintiffs' alter ego claim is barred by res judicata. Therefore, the Court **DISMISSES** with **PREJUDICE** the plaintiffs' alter ego claim.

## F.

Finally, the plaintiffs' remaining claims are exemplary damages and attorney's

---

[67] *Dynex Capital's Appendix in Support of its Motion to Dismiss Against Plaintiffs' Original Complaint* [Doc. No. 7], at 55.

[68] *Id.* at 125.

fees.  However, these are not claims but instead are requests for relief contingent on the success of other actual claims.[69]  As those actual claims have been dismissed, the Court **DENIES** the plaintiffs' requests for exemplary damages and attorney's fees.

G.

For the reasons stated above, the Court **DISMISSES** with **PREJUDICE** the plaintiffs' fraudulent transfer claims and alter ego claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Consequently, the Court **DENIES** the plaintiffs' requests for exemplary damages and attorney's fees.  Because the Court's dismissal of the plaintiffs' claims is dispositive, the Court **DISMISSES** as **MOOT** the defendants' pending motion to extend time to file summary judgment and any other pending motions.

**IT IS SO ORDERED** this 28th day of October 2019.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[69] *See, e.g., Boelens v. Redman Homes, Inc.*, 748 F.2d 1058, 1070 (5th Cir. 1984) ("To recover punitive damages, 'an independent tort' must be separately pleaded and proved."); *see also, e.g., In re Positive Health Mgmt., Inc.*, No. ADV 10-03121, 2015 WL 66186, at *1–2 (S.D. Tex. Jan. 5, 2015) ("Section 24.013 permits a court to award attorneys' fees 'as are equitable and just.' The section does not apply to TUFTA claims on which the party seeking to recover fees did not prevail[.]").